# No. 14-5037

## IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

BASR PARTNERSHIP and WILLIAM F. PETTINATI, SR.
Tax Matters Partner,
*Plaintiffs-Appellees,*

v.

UNITED STATES OF AMERICA,
*Defendant-Appellant.*

On Appeal from the Judgment of the
United States Court of Federal Claims
No. 10-244; Judge Susan G. Braden

## BRIEF OF APPELLEES

Thomas A. Cullinan
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404) 853-8075
Fax: (404) 853-8806

*Attorney for Plaintiffs-Appellees*
July 8, 2014

# CERTIFICATE OF INTEREST

Counsel for Appellees certifies the following:

1.      The full name of every partner or amicus represented by me is:

       BASR Partnership and William F. Pettinati, Sr., Tax Matters Partner

2.      The name of the real party in interest (if the party named in the caption is not

the real party in interest) represented by me is:

       BASR Partnership and William F. Pettinati, Sr., Tax Matters Partner

3.      All parent corporations and any publicly held companies that own 10 percent

or more of the stock of the party or amicus curiae represented by me are:

       There are no parent corporations of Appellees or publicly held companies

       owning 10 percent or more of Appellees' stock.

4.      The names of all law firms and the partners or associates that appeared for

the party or amicus now represented by me in the trial court or agency are expected

to appear in this court are:

       Thomas A. Cullinan of Sutherland Asbill & Brennan LLP


Dated: July 8, 2014                    /s/ Thomas A Cullinan
                                       Thomas A. Cullinan
                                       *Attorney for Plaintiffs-Appellees*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..........................................................................i

TABLE OF CONTENTS............................................................................... ii

TABLE OF AUTHORITIES ........................................................................iv

STATEMENT OF RELATED CASES ..................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE AND OF THE FACTS .........................................2

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT ...............................................................................14

       Standard of Review.........................................................................14

  A.    Section 6229 Controls Whether And For How Long The Statute
of Limitations Created by Section 6501(a) is Extended With
Respect to Partnership Items. ...............................................14

      1.    The plain text of the statutory scheme dictates that
Section 6229 governs whether and for how long the time
that the IRS has to assess is extended for tax attributable
to partnership items.................................................15

      2.    Longstanding canons of statutory construction dictate
that Section 6229 governs whether and for how long the
time that the IRS has to assess is extended for tax
attributable to partnership items. ...............................22

      3.    The government's construction of the statutory scheme
violates Congress' intent...........................................28

      4.    Aside from the CFC in the proceedings below, no court
has ever applied Section 6501(c)(1) in lieu of Section
6229(c)(1) to determine whether a fraudulent partnership
tax return held open the partners' statutes of limitation. ..........29

5.    The legislative history confirms that Congress intended Section 6229(c)(1) to govern whether and for how long the time that the IRS has to assess is extended for tax attributable to partnership items. ...............................................31

6.    *AD Global* does not support the government's position...........31

B.   The Government Must Prove That The Pettinatis Intended To Evade Tax For Section 6501(c)(1) To Apply. ....................................33

1.    The plain language of Section 6501(c)(1) indicates that the intent to evade tax means the intent of the taxpayer...........33

2.    The courts have consistently defined fraud by reference to the intent of the taxpayer. .....................................................39

3.    The government has abandoned the agency theory that the Tax Court relied on in *Allen*.................................................41

4.    No policy justification exists to hold open the statute of limitations in this case.............................................................45

5.    The Second Circuit's holding in *City Wide* supports BASR. ......................................................................................49

C.   The Government Has Not Produced Sufficient Evidence of Fraud Upon Which A Fact-finder Applying the Clear and Convincing Evidence Requirement Could Reasonably Find In Its Favor...............................................................................................53

D.   The Government's Assertion of Fraud is Arbitrary and Capricious and is Therefore Invalid Under the Administrative Procedure Act. ......................................................................................55

CONCLUSION...........................................................................................58

STATUTORY ADDENDUM ....................................................................59

CERTIFICATE OF SERVICE ..................................................................64

CERTIFICATE OF COMPLIANCE.........................................................65

# TABLE OF AUTHORITIES

## CASES

*AD Global Fund, LLC v. United States*, 481 F.3d 1351 (Fed. Cir. 2007)...14, 15, 16

*Allen v. Commissioner*, 128 T.C. 37 (2007) ............................................42

*Am. Boat Co., LLC v. United States*, 583 F.3d 471 (7th Cir. 2009) .........................4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)......................................13, 53

*Badaracco v. Commissioner*, 464 U.S. 386 (1984) ..............................34, 35, 38, 47

*Burlington Northern and Santa Fe Ry. Co. v. Surface Transp. Bd.*,
    403 F.3d 771 (D.C. Cir. 2005)...............................................................57

*Candela v. United States*, 635 F.2d 1272 (7th Cir. 1980) ......................................39

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver
    N.A.*, 511 U.S. 164 (1994).................................................................43, 49

*City Wide Transit, Inc. v. Commissioner*, 102 T.C.M. (CCH) 542 (2011) .......49, 50

*City Wide Transit, Inc. v. Commissioner*, 709 F.3d 102
    (2d Cir. 2013)....................................................................48, 50, 51, 52

*Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011) .........................................55

*Colorado v. New Mexico*, 467 U.S. 310 (1984)......................................................53

*Dominion Resources, Inc., v. United States*, 681 F.3d 1313 (Fed. Cir. 2012) ........56

*Duramed Pharms., Inc. v. Watson Labs., Inc.*, 413 F. App'x 289
    (Fed. Cir. 2011)................................................................................53

*Estate of Roe v. Commissioner*, 36 T.C. 939 (1961) .........................................40, 41

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)......................35

*Gagliardi v. United States*, 81 Fed. Cl. 772 (2008).................................................53

*Ginsburg v. Commissioner*, 127 T.C. 75 (2006)................................................20, 21

*Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324 (2006), *rev'd*, 636 F.3d 1368 (Fed. Cir. 2011), *cert. granted*, *judgment vacated*, 132 S. Ct. 2099 (Apr. 30, 2012)...................................................................................55

*Grapevine Imports, Ltd. v. United States*, 636 F.3d 1368 (Fed. Cir. 2011) .............4

*Home Concrete & Supply, LLC, v. United States*, 599 F. Supp. 2d 678 (E.D.N.C. 2008), *rev'd*, 634 F.3d 249 (4th Cir. 2011), *aff'd*, 132 S.Ct. 1836 (2012).........................................................................................55

*Klemach v. Commissioner*, 30 T.C.M. (CCH) 723 (1971), *acq. by Commissioner*, 1971 WL 29518 (IRS AOD Nov. 22, 1971...........................40

*Lauckner v. United States*, No. 93-1594, 1994 WL 837464 (D. N.J. May 4, 1994 ), *aff'd* 68 F.3d 69 (3d Cir. 1995) ...........................................36

*Loving v. Internal Revenue Service*, 742 F.3d 1013 (D.C. Cir. 2014)....................43

*Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962 (Fed. Cir. 2009)............4

*Mayo Found. for Med. Educ. & Res. v. United States*, 131 S. Ct. 704, 178 L. Ed. 2d 588 (2011) ...........................................................................56

*Morrison-Knudsen Constr. Co. v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 461 U.S. 624 (1983)...................................34, 38

*Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983)..........................56

*Neely v. Commissioner*, 116 T.C. 79 (2001)..............................................39

*Payne v. United States*, 224 F.3d 415 (5th Cir. 2000)....................................39

*Prati v. United States*, 603 F.3d 1301 (Fed Cir 2010)...................................16

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012) ......22

*Rhone–Poulenc Surfactants & Specialties, L.P. v. Commissioner*, 114 T.C. 533 (2000), *appeal dismissed and remanded*, 249 F.3d 175(3d Cir.2001) ...................................................25, 26, 27, 39

*Riley v. Commissioner*, 43 T.C.M. (CCH) 80 (1981)....................................41

*River City Ranches #1 Ltd. v. Commissioner*, 94 T.C.M. (CCH) 1 (2007).............30

*River City Ranches v. Commissioner*, 313 F. App'x 935 (9th Cir. 2009) ...............30

*Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350 (2012) ........................35

*Rothensies v. Elec. Battery Co.*, 329 U.S. 296 (1946)..............................47

*Transpac Drilling Venture 1982-12 v. Commissioner,* 147 F.3d 221 (2d Cir. 1998) ............................................................29

*Transpac Drilling Venture, 1983-2 v. United States*, 83 F.3d 1410 (Fed. Cir. 1996) ...........................................................28, 29

*United States v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836 (2012)...............4

*United States v. Updike*, 281 U.S. 489 (1930)..........................................36

*United States v. Woods*, 134 S. Ct. 557 (2013)..........................................4

*Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609 (1973)...............23

### STATUTES

5 U.S.C. § 701 *et seq*...............................................................55

26 U.S.C. § 6161 ......................................................................37

26 U.S.C. § 6229 .............................................................14, 19, 50

26 U.S.C. § 6229(a) .................................................................16

26 U.S.C. § 6229(b)(3)...........................................................19, 60

26 U.S.C. § 6229(c) .............................................................17, 22

26 U.S.C. § 6404(g) ................................................................37

26 U.S.C. § 6404(g)(2)(B) ..........................................................37

26 U.S.C. § 6501 ..............................................................19, 60-61

26 U.S.C. § 6501(a) ............................................................14, 18

26 U.S.C. § 6501(c)(1)...............................................................29

26 U.S.C. § 6501(n)(2)...........................................................15, 18

26 U.S.C. § 6663 ..................................................................................37, 62

26 U.S.C. § 7454(a) ........................................................................35, 53, 62

Revenue Act of 1918, Pub. L. No. 65-254, 40 Stat. 1057, 1083 ................. 33, 62-63

## Legislative Materials

H.R. Rep. No. 97-760 (1982) (Conf. Rep.)...........................................31

S. Rep. No. 97-530 (1982) (Conf. Rep.) ..............................................31

## Other Authorities

I.R.S. C.C.A. 201238026 (Sept. 21, 2012) ...........................................45

I.R.S. F.S.A. 200104006 (Sept. 15, 2000) .......................................42, 45

I.R.S. F.S.A. 200126019 (Mar. 30, 2001)............................................42

Opening Brief for the Appellant, *City Wide Transit, Inc. v. Commissioner*,
709 F.3d 102 (2013) (No. 12-1040)**,** 2012 WL 2501145 ............................50, 51

Order and Decision, *R and J Partners v. Commissioner*, No. 7166-06 (Tax
Ct. Oct. 23, 2009)..................................................................................46

## STATEMENT OF RELATED CASES

1.      No other appeal in or from the same civil action or proceeding in the lower

court was previously before this or any other appellate court.

2.      Counsel for BASR Partnership ("BASR") is not aware of any cases in other

courts that will be directly affected by this Court's decision in the pending

appeal.

## STATEMENT OF THE ISSUES

BASR disagrees with the government's statement that "it is undisputed that

the tax returns in this case were fraudulent."  BASR moved for summary judgment

on four different grounds, one of which was that the government did not carry its

burden of providing sufficient evidence of fraud that a jury could reasonably find

in its favor applying the clear and convincing evidentiary standard.  BASR

reasserts all four grounds in support of the judgment, raising the following issues:

1)      Whether Section 6501(c)(1), the general fraud exception to the normal three-

year statute of limitations on tax assessments, or Section 6229(c)(1), the special

exception that applies for fraudulent partnership tax returns, governs whether and

for how long the normal three-year assessment period is extended for tax

attributable to allegedly fraudulent partnership items? [1]

---

[1] All references to "Section" or "Code" are to the Internal Revenue Code of 1986
and as in effect during 1999, the tax year in question.

2)      If Section 6501(c)(1) is the operative statute, whether the government can prove that the tax returns filed by BASR's partners were "false or fraudulent return[s] with the intent to evade tax" by showing that someone other than the partners intended to evade tax?

3)      Whether the government provided sufficient evidence of fraud that a reasonable juror could find in its favor applying the clear and convincing evidentiary standard?

4)      Whether the government may treat BASR and its partners differently than it treated other similarly situated partnerships and partners, accusing them, but not the other similarly situated taxpayers, of filing fraudulent tax returns, without any explanation for the disparate treatment?

## STATEMENT OF THE CASE AND OF THE FACTS

Pursuant to Federal Circuit Rule 28(b), BASR has limited its Statement of the Case and of the Facts to specific areas of disagreement with that Statement in the government's opening brief:

1)      BASR disagrees with the government's unsupported assertion, at page 2 of its brief, that Erwin Mayer "offered to make [the Pettinatis'] tax liability go away." There is no support in the record for that colorful statement. To the contrary, Bill Pettinati, Sr., testified that Mayer explained to him that the transaction was "an investment opportunity . . . that we could either make or lose money, and that

would also potentially have tax benefits." (JA 1008 at 48:13-17.) Bill Pettinati, Jr., similarly testified that Mayer and Craig Brubaker, a banker at Deutsche Bank, presented the transaction to the Pettinatis as a "tax-advantaged investment opportunity." (JA 1054 at 25-28.) Their testimony is un-rebutted and entirely consistent with the now well-publicized sales pitch that Jenkens & Gilchrist ("Jenkens") used to convince hundreds of taxpayers – many with far greater sophistication in tax and finance than the Pettinatis - that this transaction was completely legitimate. Indeed, the government credits the Pettinatis' testimony to explain that Mayer "pitched them on a 'tax-advantaged investment opportunity'" on page 6 of its brief.

2)     BASR disagrees with the government's claim, also on page 2 of its brief, that the type of short sale transaction structured by Jenkens that is at issue in this case is a "variant of a fraudulent tax shelter popularly known as 'Son of BOSS'". BASR does not deny that the transaction falls within the class of transactions that the government calls "Son of BOSS." Nor does BASR deny for purposes of this appeal that the transaction is a "tax shelter." But BASR disagrees with the government's contention that Son of BOSS transactions are fraudulent.

Although Son of BOSS transactions have been or are being litigated in hundreds of cases, already producing many dozens of decisions, to the best of BASR's knowledge no court, including the Supreme Court and this Court, has ever

3

found the transaction to be fraudulent.  *See, e.g., United States v. Woods*, 134 S. Ct. 557 (2013) (considering civil tax penalties to be applied in a case involving a Jenkens' Son of BOSS transaction); *United States v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836 (2012) (considering whether a different exception to the normal statute of limitations applied in a case involving a Jenkens' Son of BOSS transaction, which inquiry would be moot if the fraud exception applied); *Grapevine Imps., Ltd. v. United States*, 636 F.3d 1368 (Fed. Cir. 2011) (same); *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962 (Fed. Cir. 2009) (holding obligation to close a short sale is a liability for purposes of Section 752). At least one court has even held that the IRS may not impose <u>any</u> civil tax penalty –let alone a fraud penalty- on taxpayers who engaged in the exact type of transaction that is at issue here.  *See Am. Boat Co., LLC v. United States*, 583 F.3d 471 (7th Cir. 2009) (declining to impose penalties on a taxpayer who participated in a Son of BOSS transaction relying on Jenkens and Mayer).

The government calls the transaction false or fraudulent on almost every page of its brief.  Repetition does not make it true.  The government never offers any specific support for its claim that the type of short sale transaction devised by Jenkens was "a variant of a fraudulent tax shelter."  Nor does the government allege or argue that there is anything unique about the specific transaction at issue

in this case to make it fraudulent, whereas all the other iterations of the "Son of BOSS" transaction involving other taxpayers were not.

3)　　BASR also disputes the government's unsupported contention on page 2 of its brief that the Pettinatis "hired Mayer."  It is undisputed that the Pettinatis hired the firm of Jenkens to be their legal adviser.  (JA 169; JA 1696-98.)  The Pettinatis had a few phone calls with Mayer, but it was their understanding that that they were being represented by the law firm (and not any particular lawyer).  (JA 169.)  Likewise, Mayer testified that he was only one of many lawyers at Jenkens who worked on the short sale transaction and that other partners at the firm had to review and approve any tax opinions before the firm would issue them.  (*See* JA 1824 at 2753:1 - 2755:10; JA1825 at 2896:7-25; JA 1828 at 3543:8 - 3544:5.)  The tax opinions that Mayer provided to the Pettinatis were signed by "Jenkens & Gilchrist", and Bill Pettinati, Sr. paid the firm for them.  (JA 169; JA 357-453; JA 455-551; JA 553-647; JA 649-745.)  The internal Jenkens' Tax Opinion Sign-Off Form for the Pettinatis includes a review and sign off by three other attorneys.  (JA 1831.)  In addition, Mayer communicated to Bill Pettinati, Sr. that the tax opinion was "our [*i.e.*, Jenkens'] opinion."  (JA 1098.).  Mayer also testified that when "a law firm issues an opinion letter, it's the law firm that stands behind the opinion letter."  (*See* JA 1827 at 3527:22-25.)  Further, most of the correspondence between the Pettinatis (or their CPA, John Malone) and Jenkens was with Jane

Stein, not Mayer. (JA 169; *see, e.g.*, JA 1277-81.) In short, the government has greatly exaggerated Mayer's role in this transaction and understated the role of Jenkens.

4)      BASR also disputes the government's claim on page 2 of its brief that the Pettinatis hired Mayer "to guide them through" a fraudulent tax shelter. The government's brief is littered with innuendo that the Pettinatis hired Mayer to help them evade their taxes. The government has admitted, however, that "it has made reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny whether the Pettinatis (William Sr., Virginia, William Jr., and Andrew) themselves possessed an 'intent to evade tax' within the meaning of 26 U.S.C. § 6501(c)(1) . . ." (JA 831-832.) Moreover, the government expressly stated in the proceedings below that it is <u>not </u>asserting that BASR or its partners intended to evade tax. (JA 845-846.)

The government was right to make these concessions. The Pettinatis are not sophisticated taxpayers. As the owner of Page Printing, Bill Pettinati, Sr. did everything from cleaning the toilets to managing production to selling the products. (JA 168; JA 1001 at 18.) Virginia Pettinati helped with accounts payable, accounts receivable, human resources, or whatever miscellaneous help was needed at Page Printing. (JA 168; JA 1042 at 9.) Bill Pettinati, Jr. worked for Page Printing initially by delivering products to customers and then moving to

sales.  (JA 168; JA 1052 at 19-20.)  Andrew Pettinati worked on accounts

receivable, accounts payable, and collections, and as the shipping manager.  (JA

168; JA 1075 at 7.)  Yet, despite their efforts to fill all the various roles required by

the business, they always relied on outside professionals to prepare the tax returns

for Page Printing.  (JA 168; JA 1002 at 22-23.)

5)      BASR disagrees with the government's unsupported claim on page 3 of its

brief that the manner in which BASR reported the transaction on its tax returns hid

it from the IRS, causing the IRS to have "no idea of the Pettinatis' participation in

the scheme until their names appeared on a list of tax shelter clients subpoenaed

from Jenkins & Gilchrest."  To the contrary, BASR attached "Section 754

Elections" to both of the returns that it filed during 1999 that clearly explained to

the IRS that BASR was stepping up the basis in the Page Printing stock by

$6,629,311, which is the exact amount of additional income that the government

believes that BASR should have reported on its partnership tax return.  (JA 1205-

06; 1221-22.)  When BASR sold the stock, it fully reported the sales proceeds, the

increased basis, and the net capital gain.  (JA 169; JA 1219.)

In another Son of BOSS case involving Jenkens, the Tax Court held that a

taxpayer's reporting of the transaction in the same manner that BASR reported it

"completely reported" the transaction and did not put the IRS "at a special

disadvantage".  (JA 1835.)  The real reason that the IRS did not find BASR's

transaction before the statute of limitations expired is that the IRS did not review

BASR's return.  Moreover, the government's claim that the manner in which

BASR's tax returns were prepared caused the IRS' delay in beginning the audit is

belied by the undisputed fact that it still took the IRS twenty-seven months to start

the audit from the day that Jenkens separately disclosed BASR's transaction to the

IRS.  (*See* Gov't Br. 23.)

Even the government's claims that Jenkens structured the transaction to

reduce the likelihood of an IRS audit are exaggerated.  For example, the

government complains that the Pettinatis executed confidentiality agreements so

that it "is little wonder then that the IRS did not discover the Pettinatis'

involvement" until more than three years after they filed their tax returns (Gov't

Br. 8, 47), but nothing in those agreements precluded the Pettinatis from disclosing

anything about the transaction to the IRS, other than allowing Jenkens an

opportunity to object to any IRS request for information.  (*See* JA 1089.)  As

another example, the government complains that the Pettinatis used single-member

LLCs to acquire their short sale positions, but that is a common feature in almost

every Son of BOSS transaction because without the use of an LLC an individual

investor would expose himself to the risk of having to cover the short position

without recourse to the borrowed funds should the lender go bankrupt.  In any

event, as explained above, the Tax Court has already held that the exact manner in

which BASR and its partners reported the transaction completely disclosed it to the IRS.

6)       BASR disagrees with the government's suggestion on page 5 of its brief that Mayer "caused" the Pettinatis' returns to be prepared in a particular manner.  Bill Pettinati, Sr. hired the accounting firm of Malone & Bailey PLLC to prepare the tax returns for Page Printing and the Pettinatis beginning in the late 1990s.  (JA 168; JA 956 at 16; 957 at 17.)

John C. Malone, a CPA and partner in Malone & Bailey, prepared the tax returns for BASR and the returns filed by its partners.  (JA 170; JA 964 at 45.) Malone and the Pettinati family have known each other since around 1981.  (JA 170; JA 956 at 15.)  Malone reviewed the opinions from Jenkens, considered them to be reasonable, and took them into account when preparing the tax returns.  (JA 990 at 150-151.)  He would not have considered the opinions had he found them to be unreasonable.  (JA 990 at 151:6-9.)  Malone personally reviewed all the transactional documents to make sure that the returns "tracked what actually happened."  (*Id.* at 151:20-21.)  When he disagreed with Jenkens about how the transactions should be reported on the returns, he "did it [his] way."  (JA 992 at 157:22.)  Malone ultimately signed the returns as a paid preparer.  (JA 988 at 141-142.)

Moreover, Mayer himself recognized that Malone – and not Jenkens - was to prepare the returns, for when he delivered the tax opinions to the Pettinatis he instructed them to provide them to "your tax preparer." (JA 1028 at 127:24.) Mayer makes this clear in his affidavit in explaining that Stein provided "assistance" to the Pettinatis' "return preparer" (i.e., Malone). (JA 951.) Indeed, the government concedes that "John Malone was the Pettinatis' return preparer in 1999." (JA 1769.)

Bill Pettinati, Sr. paid Malone's customary hourly fee for the tax return services that Malone & Bailey provided to BASR and its partners. (JA 170; JA 993 at 164-JA 994 at 165.) While Malone was aware of and considered the excellent reputation of Jenkens, he had no prior relationship with Jenkens, Mayer, or Jane Stein, and has never worked with Mayer or Stein, other than with regard to the transactions at issue in this case. (JA 990 at 151-152.) Malone was not paid by Jenkens, nor did he pay Jenkens for any of its advice. (*Id.*)

The government does not assert that Malone possessed an "intent to evade tax". (JA 846.) And the government admits that it "has made reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny" that Malone or Malone & Bailey had any specific intent to evade taxes with respect to the tax returns filed by BASR and its partners. (*Id.*)

Bill Pettinati Sr. signed and filed the BASR partnership returns for tax years

10

ended June 12, 1999, and December 22, 1999. (JA 1199; JA 1215.) Each partner of BASR was provided a Schedule K-1 reflecting their proportionate share of gains and losses from the BASR partnership returns. (JA 170; JA 1207-14; JA 1223-32.) The partners then executed and filed their returns on various dates in October, 2000. (JA 5.) As explained above, the government does not assert that any of the partners intended to evade tax.

In short, Malone was not a puppet for Jenkens or Mayer; rather, he exercised his independent judgment in preparing the tax returns. The Pettinatis also exercised their independent judgment in signing the tax returns, largely relying on Malone to assure their accuracy. Under these facts, the government is simply mistaken in its assertion that Mayer "caused" the returns to be prepared in any particular manner.

7)      BASR disagrees with the government's claim on page 25 of its brief that it "did not invoke the 'minimum period,' including the extension under I.R.C. § 6229(c)(1)" in this case. To the contrary, the government's Answer asserted that the "statute of limitations for assessing tax remains open in this case pursuant to 26 U.S.C. §§ 6501(c)(1) and 6229(c)(1)." (JA 58.) The government did not take the position that Section 6229(c)(1) was irrelevant in this case until it became clear that the government would not be able to meet the requirements of that section.

## SUMMARY OF THE ARGUMENT

This Court should affirm the judgment for any of four different reasons.

First, the government contends that the normal three-year period that the IRS has to assess tax was extended in this case only by operation of Section 6501(c)(1). That section, however, which sets forth the general fraud exception to the statute of limitations, is not applicable in this proceeding. Instead, Section 6229(c)(1) governs whether and for how long a fraudulent partnership tax return extends the time that the IRS has to assess partners for additional tax that is attributable to partnership items. It is undisputed that the government has not met the requirements of Section 6229(c)(1). Thus, the time that the IRS had to assess additional tax against BASR's partners expired long before the IRS issued the FPAA that precipitated this case.

Second, even assuming that Section 6501(c)(1) has any role to play here, the statutory scheme, its history, and almost 100 years of judicial precedent dictate that section only applies when a return is false or fraudulent and the taxpayer intended to evade tax. The government has not even alleged, however, that the Pettinatis intended to evade tax. Instead, the government alleges only that Mayer intended to evade the Pettinatis' taxes. Mayer's intent is not relevant. Thus, the government failed to meet the requirements of Section 6501(c)(1) even it could be applicable.

Third, even if Section 6501(c)(1) could be applicable in this case, and even if the government could fulfill its requirements by showing that someone other than the taxpayer intended to evade tax, the government failed to present evidence "such that a jury applying [the clear and convincing evidentiary standard] could reasonably find" that the returns were fraudulent. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The government's case is built on an affidavit from Mayer, but he was only one of many lawyers at Jenkens who worked on this transaction, and the government has not alleged or provided any evidence that any of the other lawyers had fraudulent intent. Moreover, the government has not alleged that John Malone, the CPA who prepared and signed the returns, had fraudulent intent. And the government has not alleged that the Pettinatis had fraudulent intent. The government's argument, then, is that a tax return is fraudulent if it reflects advice given by a tax lawyer who intended for the taxpayer to evade taxes, even though the taxpayer, the return preparer, and all the other lawyers who worked on the transaction did not. The law does not support such an expansive view of fraud.

Finally, the government's assertion of fraud is arbitrary and capricious and void under the Administrative Procedure Act because the government has not given any rational justification for treating BASR and its partners differently than

how it is treating the many other partnerships and partners that engaged in the same type of transaction that is at issue here.

## ARGUMENT

**Standard of Review**

BASR agrees that the standard of review stated by the government is appropriate for the first, second, and fourth issues addressed in this response brief. The standard is different, however, for the third issue, as BASR explains in introducing that issue.

**A.   Section 6229 Controls Whether And For How Long The Statute of Limitations Created by Section 6501(a) is Extended With Respect to Partnership Items.**

Section 6501(a) is the "general" statute of limitations for tax assessments. *See AD Global Fund, LLC v. United States*, 481 F.3d 1351, 1354 n.2 (Fed. Cir. 2007). Section 6501(a) requires the IRS to assess tax within three years after a tax return is filed, except as otherwise provided in Section 6501. It is undisputed that each of the partners in BASR filed their 1999 tax returns in October of 2000. Thus, unless an exception to the normal three-year period applies, the time that the IRS had to assess tax against the partners expired in October of 2003, more than six years before the IRS issued the FPAA to BASR in early 2010.

The government asserts that the normal three-year period was indefinitely extended in this case by Section 6501(c)(1), due to BASR's allegedly fraudulent

tax return which caused its partners' tax returns to also be fraudulent.  The plain text of the Code, as well as several canons of statutory construction, legislative history, and well-reasoned case law all dictate, however, that Section 6501(c)(1) is not even potentially applicable in this partnership-level proceeding.  Instead, Section 6229(c)(1) governs whether and for how long the time that the IRS has to assess tax attributable to fraudulent partnership items is extended.  Since it is undisputed that the time that the IRS had to assess tax attributable to BASR partnership items was not extended by Section 6229(c)(1) the Court should affirm the judgment of the CFC that the statute of limitations has expired (albeit on a ground other than that adopted by the CFC).

        1.    <u>The plain text of the statutory scheme dictates that Section 6229 governs whether and for how long the time that the IRS has to assess is extended for tax attributable to partnership items.</u>

Sections 6501(c) – (m) contain a myriad of exceptions to the normal three-year assessment period created by Section 6501(a), but to determine whether that period is extended for "partnership items" Section 6501(n)(2) directs the reader to Section 6229.  *See* Section 6501(n)(2) ("For extension of period in the case of partnership items (as defined in section 6231(a)(3)), see section 6229."); *AD Global*, 481 F.3d at 1354 (citing Section 6501(n)(2) as authority for its holding that Section 6229(a) creates a "minimum period" that "may extend the regular statute

of limitations in § 6501" for assessments of "partnership items."). As this Court

has explained:

> Sections 6501 and 6229 operate in tandem to provide a single limitations period. When an assessment of tax involves a partnership item or an affected item, section 6229 can extend the time period that the IRS otherwise has available under section 6501 to make that assessment. Thus, the limitations period is the period defined by section 6501, as extended when appropriate by section 6229.

*Prati v. United States*, 603 F.3d 1301, 1307 (Fed Cir 2010) (citations omitted).

The government does not dispute that whether a partnership return is

fraudulent such that an extended statute of limitations should apply is a

"partnership item." Thus, Section 6229 governs whether and for how long the

normal three-year period that the IRS had to assess BASR's partners was extended

as a result of BASR's purportedly fraudulent tax return.

Section 6229(a) generally allows the IRS three years from the date that a

partnership tax return is filed to assess tax that is attributable to any partnership

item. *See AD Global*, 481 F.3d at 1354. It is undisputed that BASR filed its

partnership tax returns for its taxable years ended June 12, 1999 and December 22,

1999, on October 12, 2000. Thus, the minimum period provided by Section

6229(a) that the IRS had to assess tax attributable to BASR's partnership items

expired on October 12, 2003, absent an extension.

16

Section 6229 contains different ways in which the period for assessing tax that is attributable to partnership items may be extended. As pertinent to this case, Section 6229(c) (which is set out in the Statutory Addendum) sets forth a "special rule" in case of fraud. It is undisputed that the time that the IRS had to assess tax against BASR's partners was not extended by Section 6229(c)(1) because that section only applies if at least one partner intended to evade tax. That should end the inquiry in this case: the normal three-year period set out in Section 6501(a) expired with respect to each partner in October of 2003, and the minimum period created by Section 6229(a) expired in that same month.

In the proceedings below, however, the government convinced the trial court that compliance with Section 6501(c)(1) – which contains the general fraud exception to the normal three-year period - could keep open the time that the IRS has to assess BASR's partners for tax attributable to BASR's partnership items. According to the government, Section 6501, including the exceptions contained in all its subparts, is a standalone statute of limitations that creates a period for assessing tax on all items, including partnership items, without regard to the specific rules set out in Section 6229. If that were true, the government could rely on the less restrictive exceptions to the normal three-year period provided in Section 6501 to assess tax attributable to partnership items, without having to comply with the more restrictive rules found in Section 6229.

17

The government is mistaken because the plain text of the statutory scheme makes clear – in three different ways – that Section 6229 governs whether and for how long the normal three-year period that the IRS has to assess tax is extended for tax attributable to partnership items. First, as explained above, Section 6501(n)(2) says precisely that: "[f]or extension of period in the case of partnership items (as defined in section 6231(a)(3)), see section 6229". It is hard to imagine how Congress could have been any clearer in expressing its intent that Section 6229 governs whether and for how long the normal three-year assessment period is extended for tax attributable to partnership items.

Second, Section 6501(a) provides, in relevant part, that for purposes of Section 6501 "the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." Yet, in this case, the government's fraud theory is built entirely on the allegedly fraudulent BASR partnership tax return "from whom [BASR's partners] received an item of income, gain, loss, deduction, or credit." The government's argument that BASR's allegedly fraudulent tax return caused its partners' tax returns to be fraudulent

within the meaning of Section 6501(c)(1) is simply an attempted end-run around the flush language of Section 6501(a).[2]

Third, other parts of Sections 6501 and 6229 make clear that the special rules in Section 6229 that apply to partnerships govern whether and for how long the time that the IRS has to assess tax is extended for partnership items. For example, the most common way for the three-year period provided by Section 6501(a) to be extended is by agreement between the IRS and the taxpayer, which is permitted by Section 6501(c)(4). Section 6229(b)(3) contains a special rule, however, that provides that any agreement entered into under Section 6501(c)(4) shall apply to extend the minimum period set out in Section 6229(a) "only if the agreement expressly provides that such agreement applies to tax attributable to partnership items." Congress' inclusion of this special rule in Section 6229 demonstrates that Section 6501 is not, as the government claims, an independent statute of limitations that may extend the time that the IRS has to assess tax attributable to partnership items without regard to the special rules in Section 6229.

---

[2] The government claims at page 59 of its brief that its theory "does not rely on BASR's fraudulent returns." That claim is belied by the government's repeated explanation elsewhere in its brief that BASR's fraudulent returns caused the partners' returns to be fraudulent because BASR reported less gain on the sale of the Page Printing stock, which caused the partners to report less allocable gain from BASR, then the government believes was required. (*See, e.g.*, Gov't Br. 21-22.) The <u>only</u> reason the government believes that the partners' returns were fraudulent is <u>because of</u> the alleged underreported gain on the partnership return.

19

To illustrate, assume that Taxpayer and the IRS agree to extend the time that the IRS has to assess tax, but the agreement does not mention partnership items. If, as the government claims, "I.R.C. § 6229 can extend, but never shorten, the period under I.R.C. § 6501" (Gov't Br. 60), then that agreement would extend the time that the IRS has to assess including tax attributable to partnership items, notwithstanding that the agreement did not comply with Section 6229(b)(3). That is because under the government's argument, the government does not need to comply with the special rules set out in Section 6229 to extend the time that the IRS has to assess tax attributable to partnership items – the analysis stops if any of the exceptions to the normal three-year period contained in Section 6501(c) – (m) are satisfied and the government would simply rely on Section 6501(c)(4) which allows for extension agreements without the restriction imposed by Section 6229(b)(3). That construction of the statutory scheme renders Section 6229(b)(3) meaningless, because the only effect of that section would be to keep an agreement from extending the "minimum period", while placing no constraint on the same agreement extending the "maximum period." But that is precisely the government's argument: "an extension of the 'minimum period' . . . has no bearing on the maximum period that may be extended". (Gov't Br. 60.)

The Tax Court rejected that construction of the statutory scheme in *Ginsburg v. Commissioner*, 127 T.C. 75 (2006). In that case the taxpayer entered into an

agreement with the IRS that extended the time that the IRS had to assess tax, but the agreement did not expressly provide that it applied to tax attributable to partnership items as required by Section 6229(b)(3). The IRS argued the extension agreement was valid under Section 6501 notwithstanding lack of compliance with Section 6229(b)(3) on the same theory that it relies on here:

> Although "partnership items" were not referenced in the consents petitioners executed, respondent argues that section 6229 does not apply to this situation because the period of limitations under section 6501 is still open. Respondent asserts that section 6229 merely extends the general period of limitations provided by section 6501, and that when the period under section 6501 is still open, reliance on section 6229 is unnecessary. In support of his assertion, respondent [relies on] *Rhone–Poulenc Surfactants & Specialties, L.P. v. Commissioner*, 114 T.C. 533, 537 (2000), appeal dismissed and remanded 249 F.3d 175 (3d Cir.2001).

*Ginsburg*, 127 T.C. at 84. The Tax Court rejected that argument, and held that the time the IRS had to assess tax for partnership items had expired because, while the extension agreements might have satisfied the general rule that governs extension agreements in Section 6501(c)(4), the agreements failed to comply with the more specific rule that applies to extension agreements for partnership items in Section 6229(b)(3). *Id*. at 85-89.

There is no reason to apply the statutory scheme any differently in cases in which the IRS asserts that the statute of limitations is still open because a partnership return is allegedly fraudulent: just as Section 6229 contains a specific

rule for agreements to extend the time that the IRS has to assess tax attributable to partnership items, it contains specific rules that govern whether a partnership tax return is fraudulent and, if it is, for how long the statute of limitations is extended. The specific rule in Section 6229(c)(1) therefore governs whether BASR's allegedly fraudulent tax return caused any extension of the time that the IRS had to assess tax attributable to BASR's partnership items.

> 2. <u>Longstanding canons of statutory construction dictate that Section 6229 governs whether and for how long the time that the IRS has to assess is extended for tax attributable to partnership items.</u>

Two different canons of statutory construction unequivocally demonstrate that Section 6229(c)(1) controls whether and for how long the period provided in Section 6501(a) is extended for fraudulent partnership items. The first is that "the specific governs the general." *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070-71 (2012). This is a partnership proceeding, brought pursuant to the TEFRA rules codified in Sections 6221 through 6234 that, as the government explains, provide "coordinated procedures for determining the treatment of 'partnership items' in a single, unified audit and judicial proceeding." (Gov't Br. 31.) Section 6229(c) is, as the section is titled, a "[s]pecial rule in case of fraud" that contains detailed rules for determining whether and for how long the statute of limitations is extended for fraudulent partnership tax returns. It is hard to

22

believe that those rules have no application in this case, where the government is arguing that the statute of limitations is open <u>only because of</u> BASR's allegedly fraudulent partnership tax return.

Second, the government's position would render Section 6229(c)(1) superfluous, violating the "well-settled" rule "that all parts of a statute, if at all possible, are to be given effect." *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633 (1973). That is because in any case in which Section 6229(c)(1)(A) would apply to allow the IRS an unlimited time to assess tax "attributable to any partnership item", Section 6501(c)(1) would <u>also</u> apply to allow the IRS an unlimited time to assess the same tax, if the government is correct that a fraudulent partnership return can cause its partners' returns to be fraudulent within the meaning of Section 6501(c)(1). Section 6229(c)(1)(A) simply has no independent meaning under the government's construction of the statutory scheme.

The government's reading of the statutory scheme would also nullify Section 6229(c)(1)(B). If a fraudulent partnership item passed through to and reported by a partner makes the partner's return fraudulent under Section 6501(c)(1) and therefore subject to assessment "at any time", the six-year limitation on assessment in Section 6229(c)(1)(B) obviously has no meaning for such items.

23

In an attempt to show that its construction of the statutory scheme would leave some meaning for Section 6229(c)(1), the government argues that there "are a host of circumstances when a fraudulent item on a partnership return does not end up reported on a partner's return" so that with respect to any such partner the fraud would trigger Section 6229(c)(1) but not Section 6501(c)(1). (Gov't Br. 61-62.) The government's claim that there are a "host" of such circumstances – relying on the "special allocation" rules under Section 704 - is obviously exaggerated. In any event, the government's attempt to leave some thin meaning for Section 6229(c)(1) falls far short of the mark.

To begin with, the government's hypotheticals only attempt to leave some meaning for Section 6229(c)(1)(<u>B</u>) - not (<u>A</u>). The government was unable to even imagine a situation where, under the government's reading of the statute, Section 6501(c)(1) would not apply to any partner to whom Section 6229(c)(1)(A) applied.

The government's construction also fails to leave any practical meaning for Section 6229(c)(1)(B). The government offers three possible circumstances in which that section might still have some meaning under its construction of the statutory scheme. (*See* Gov't Br. 62-63.) The first and second are that the partnership makes special allocations under Section 704 so that a particular partner does not share in the fraudulent partnership item or the partnership allocates a share of the fraudulent partnership item to the partner but he does not report it. It

24

cannot be, however, that Congress enacted Section 6229(c)(1)(B) only to give the

IRS six years instead of three years to assess tax attributable to partnership items

against partners who do <u>not</u> report fraudulent partnership items.

The third circumstance posited by the government is even more desperate.

The government argues that the partnership return might be fraudulent because of

an item that does not flow through to its partners, such as a capital contribution,

that has no effect on taxable income and therefore cannot lead to an assessment.  It

<u>surely</u> cannot be that Congress enacted Section 6229(c)(1)(B) to give the IRS more

time to assess partners for something that is not assessable.

The Tax Court explained all this in *Rhone-Poulenc,* which is the only case to

have addressed the interplay of Section 6501(c)(1) and Section 6229(c)(1).  *Rhone-*

*Poulenc Surfactants & Specialties, L.P. v. Comm'r*, 114 T.C. 533, 547-49 (2000).

In that case, the taxpayer argued that Section 6229 was an absolute statute of

limitations that governed the time that the IRS had to assess tax attributable to

partnership items and that Section 6501 had no role in the analysis (i.e., the reverse

of the government's argument here).  The taxpayer supported its argument, in part,

by claiming that Section 6229(c)(1)(A) would be superfluous if Section 6501,

including Section 6501(c)(1), were the controlling statute of limitations.  The Tax

Court found that Section 6229(c)(1) had meaning, however, because it read it the

same way that BASR reads it here: "Section 6229(c)(1) deals specifically with

partnership returns [and] . . . [u]nlike section 6501(c)(1), section 6229(c)(1) applies

only to tax attributable to partnership items or affected items." *Rhone-Poulenc*,

114 T.C. at 548-49. On the other hand, the Tax Court found (again consistent with

BASR's position here) that the time to assess tax against a particular partner could

be open under Section 6501(c)(1) based on the partner's own fraud <u>unrelated</u> to the

partnership return:

> Section 6501(c)(1) would literally apply to a partner
> whose individual or corporate return was fraudulent
> regardless of whether the partnership return was
> fraudulent. Section 6501(c)(1) allows for an unlimited
> period for assessing any tax for the year in which a
> fraudulent return was filed regardless of whether some of
> the tax may be due to nonfraudulent items. Thus, if
> section 6501(c)(1) applies to a particular taxable year, it
> clearly permits an open-ended period for any assessment
> of tax even if part of the assessment was based on
> nonfraudulent partnership items.

*Id*. at 548. (internal citations omitted). As explained by the Tax Court, Section

6501(c)(1) only applies in the partnership context to keep a partner's statute of

limitations open when the partner's return is fraudulent for reasons <u>unrelated</u> to the

partnership return.

The government's position in this case – that a fraudulent partnership return

<u>causes</u> its partners' returns to be fraudulent – would completely eviscerate the

distinction that the Tax Court relied on in *Rhone-Poulenc* to give meaning to both

Section 6501(c)(1) and Section 6229(c)(1)(A) because, as discussed above, the

fraud that would cause Section 6229(c)(1)(A) to apply to any partner would (under the government's position) <u>always</u> cause Section 6501(c)(1) to apply to such partner. Moreover, the Tax Court found that Section 6229(c)(1)(B) had independent meaning because "unlike section 6501(c)(1), section 6229(c)(1)(B) provides a separate 6-year period for assessment of taxes for partners who did not sign or participate in the preparation of the fraudulent return." *Id*. at 549.

The government's citation to *Rhone-Poulenc* to support its claim that "I.R.C. § 6229(c)(1) is not superfluous with I.R.C. § 6501(c)(1)" (Gov't Br. 63) is seriously misguided. While it is true that the Tax Court held that Section 6501(c)(1) does not make Section 6229(c)(1) superfluous, that is <u>only</u> because the court believed (directly contrary to the government's position here) that Section 6229(c)(1) applies to fraudulent partnership items, whereas Section 6501(c)(1) applies (in the partnership context) to give the IRS unlimited time to assess tax for "nonfraudulent partnership items" when a partner's return is fraudulent for reasons unrelated to the partnership return.

Finally, the government's reading of Section 6501 would also render Section 6229(b)(3) superfluous. If Section 6501 controls how long the government has to assess tax on partnership items without regard to Section 6229, then the limitation in Section 6229(b)(3) on how the period under Section 6501 may be extended by agreement would never come into play and is meaningless. It cannot be that

27

Congress meant for section 6501 to be read in such a way as to nullify multiple parts of section 6229.

       3.   <u>The government's construction of the statutory scheme violates Congress' intent.</u>

The government's construction of the statutory scheme also violates Congress' intent, in three different respects. First, a "purpose of the 'intent to evade taxes' requirement [in Section 6229(c)(1)] is to protect limited partners from an extension of the Commissioner's time for assessing additional taxes against them where the partner who signed the return did not know that it contained false items." *See Transpac Drilling Venture, 1983-2 v. United States*, 83 F.3d 1410, 1415 (Fed. Cir. 1996). In the government's view, however, whether a partner intended to evade tax is irrelevant, and the government can circumvent the protections for limited partners built into Section 6229(c)(1) by simply relying on Section 6501(c)(1).

Second, the government's argument conflicts with Congress' express intent in Section 6229(c)(1)(B) that the IRS be given only an additional six years to assess tax attributable to partnership items against partners who did not sign or participate in preparing a partnership's fraudulent return. According to the government, the IRS may avoid the six-year limitation by simply relying on Section 6501(c)(1) to assess those partners for additional tax "at any time."

Third, the government's position cannot be reconciled with Congress' express limitation on the amount of additional taxes that may be assessed against partners in a partnership that has filed a fraudulent return. When its requirements are met Section 6229(c)(1) gives the IRS additional time to assess additional tax that is "attributable to partnership items." Section 6501(c)(1), on the other hand, allows the IRS to assess any additional tax that is due on a fraudulent return. In other words, if Section 6501(c)(1) applies, the IRS has an unlimited time-period to assess tax for <u>any</u> item on (or that should be on) the return.

4. <u>Aside from the CFC in the proceedings below, no court has ever applied Section 6501(c)(1) in lieu of Section 6229(c)(1) to determine whether a fraudulent partnership tax return held open the partners' statutes of limitation.</u>

The CFC's decision to apply Section 6501(c)(1) instead of Section 6229(c)(1) to determine whether the allegedly fraudulent BASR partnership tax return held open the time that the IRS had to assess tax for BASR partnership items conflicts with every other case to have ever considered that issue. Since TEFRA's enactment in 1982, the courts (including this Court) have consistently applied Section 6229(c)(1) (and not Section 6501(c)(1)) to determine the period that the IRS has to assess tax for partnership items from a fraudulent partnership tax return. *See, e.g., Transpac Drilling Venture 1982-12 v. Comm'r,* 147 F.3d 221, 299 (2d Cir. 1998); *Transpac Drilling Venture 1983-2 v. United States*, 83 F.3d 1410 (Fed.

Cir. 1996); *see also River City Ranches v. Comm'r*, 313 F. App'x 935, 937 (9th Cir. 2009) ("Section 6229(c)(1) requires consideration of the intent of the partner who participated in the preparation of the partnership returns . . . . Whether the individual partners intended fraud on their individual returns has no bearing on a partnership level proceeding.")

The decision to apply Section 6229(c)(1) instead of Section 6501(c)(1) can make a significant difference, because the former statute gives the IRS only an additional six years to assess tax against partners who did not participate in the fraud, while Section 6501(c)(1) (if it were applicable) would give the IRS an unlimited amount of time to assess. *See, e.g., River City Ranches #1 Ltd. v. Comm'r*, 94 T.C.M. (CCH) 1, 13 (2007) (applying Section 6229(c)(1) to hold that the IRS' FPAAs for the partnerships' 1987, 1988 and 1989 tax years were timely with respect to the limited partners because the FPAAs were issued within six years of the filing date of the partnership returns, but that the FPAA for the 1984 tax year was not timely because it was issued more than six years after the filing date).

5.  The legislative history confirms that Congress intended Section 6229(c)(1) to govern whether and for how long the time that the IRS has to assess is extended for tax attributable to partnership items.

The Senate and House Conference Reports both use the same language to explain TEFRA's effect on the statute of limitations in a case involving a fraudulent partnership tax return:

> Assessments may be made at any time against partners signing or actively participating in a fraudulent return. Against other partners affected by such return, the period for assessment is extended from 3 to 6 years.

S. REP. NO. 97-530, at 606 (1982) (Conf. Rep.); H.R. REP. NO. 97-760, at 606 (1982) (Conf. Rep.). The government's theory in this case is wholly premised on the partners' tax returns being affected by BASR's allegedly fraudulent tax return, but would extend the period for assessment to _forever_, instead of from 3 to 6 years as intended by Congress.

6.  _AD Global_ does not support the government's position.

As is hopefully evident by now, the plain language of the statutory scheme, the legislative history, congressional intent, and case law all dictate that Section 6229(c)(1) governs here. On its side of the ledger, the government is mainly left with arguing that _AD Global_ governs the outcome of this issue. It does not. Indeed, none of the cases cited by the government on page 60 of its brief, including _AD Global_, even discuss the interplay of Section 6501(c)(1) and Section

31

6229(c)(1), except for *Rhone-Poulenc* which, as explained above, strongly

supports BASR.  Nothing in *AD Global* suggests that fraud on a partnership return

can <u>cause</u> its partners' returns to be fraudulent within the meaning of Section

6501(c)(1).  And none of the cited cases held that the IRS may rely on Section

6501(c)(1) instead of Section 6229(c)(1) to hold open the time that the IRS has to

assess tax for a fraudulent partnership item.

Moreover, BASR is not, as the government suggests, attempting to re-argue

the issue decided in *AD Global*.  In that case, the taxpayer argued that Section

6229(a) is an independent statute of limitations that sets forth the time that the IRS

has to assess tax that is attributable to partnership items.  This Court rejected that

argument, holding that the time that the IRS has to assess tax for all items,

including partnership items, is set forth in Section 6501(a).  BASR is not arguing

that Section 6229 creates an independent statute of limitations for partnership items

that can shorten the three-year period provided by Section 6501(a).  Rather,

BASR's position is that Section 6229 works <u>with</u> Section 6501(a): Section 6501(a)

creates the normal three-year period for assessing tax, and Section 6229 sets forth

the rules that govern whether and for how long that period may be extended for

assessing tax attributable to partnership items.  Thus, whether the <u>partnership's</u>

purported fraud triggers an extended statute of limitation is governed by Section

6229(c)(1), not Section 6501(c)(1).

**B.** **The Government Must Prove That The Pettinatis Intended To Evade Tax For Section 6501(c)(1) To Apply.**

Even if Section 6501(c)(1) were to have some role to play here, the CFC correctly held that section requires the government to prove that the <u>taxpayers</u> intended to evade tax for the assessment period to be extended. That holding properly implements the plain language of the statutory scheme, comports with its legislative history and fulfills its purpose, and is well supported in almost 100 years of judicial precedent.

1.  <u>The plain language of Section 6501(c)(1) indicates that the intent to evade tax means the intent of the taxpayer.</u>

The general fraud exception to the statute of limitations was born in Section 250(d) of the Revenue Act of 1918 (the "Act"), Pub. L. No. 65-254, 40 Stat. 1057, 1083. Congress enacted the fraud penalty (currently codified in Section 6663) at the same time, as part of Act Section 250(b). Both subsections are set out in the Statutory Addendum at the end of this brief.

Although Congress did not expressly state in either Act Sections 250(b) or (d) that the term "intent" meant the intent of the taxpayer, other parts of the Act made that clear. For example, Act Section 250(b) provided that there "shall be no penalty" if "the return is made in good faith and the understatement of the amount in the return is not due to any fault <u>of the taxpayer.</u>" (emphasis added). The statute confirmed this by imposing a negligence penalty if the "understatement is

due to negligence <u>on the part of the taxpayer</u>, but without intent to defraud." (emphasis added). These provisions make plain that the term "intent", for purposes of the penalty provisions enacted in Act Section 250(b), meant the intent of the taxpayer.

The Court should presume that the term "intent," as Congress used it one sentence later in Act Section 250(d), also meant the intent of the taxpayer, for "a word is presumed to have the same meaning in all subsections of the same statute." *Morrison-Knudsen Constr. Co. v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 461 U.S. 624, 633 (1983); *see also Badaracco v. Commissioner*, 464 U.S. 386, 397 (1984) (refusing to define the term "return" one way for purposes of Section 6501(a) and another way for purposes of the rest of Section 6501). Moreover, as Professor Camp explains in his amicus brief, the legislative history shows that Congress copied the phrase "intent to evade tax" in Act Section 250(d) <u>from</u> the fraud penalty provisions, strongly suggesting the Congress <u>intended</u> it to have the same meaning in both subsections.

While the relevant language in Act Sections 250(b) and (d) has been re-codified many times and has now been separated into Sections 6501(c)(1) and 6663, nothing in the text or legislative history of any of the subsequent re-enactments suggests that Congress intended to redefine the intent requirement for purposes of Section 6501(c)(1), and the Court should therefore interpret Section

34

6501(c)(1) in the context in which it was originally enacted. *See Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350, 1357 (2012).

Moreover, the current Code <u>still</u> makes clear that Congress defines tax fraud by reference to the taxpayer's intent. This is demonstrated in Section 7454(a), which is the provision that puts the burden of proving fraud under Section 6501(c)(1) on the government. *See Badaracco,* 464 U.S. at 399. Section 7454(a) applies in "any proceeding involving the issue whether <u>the petitioner</u> has been guilty of fraud with intent to evade tax." (Emphasis added). Section 7454(a), when read in conjunction with Section 6501(c)(1), makes plain Congress' current intent that fraud requires the government to prove that <u>the taxpayer</u> (i.e., who is the "petitioner" in tax cases) intended to evade taxes. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning -- or ambiguity -- of certain words or phrases may only become evident when placed in context."). Indeed, if the government is right that the "intent" requirement in Section 6501(c)(1) can be satisfied by anyone's ill intent, then Section 7454(a) would not apply to put the burden of proof on the government, because that section only applies when the issue is "whether the petitioner has been guilty of fraud with intent to evade tax." But the Supreme Court explained in

*Badaracco* that Section 7454(a) <u>does</u> place the burden to prove fraud under Section

6501(c)(1) on the government.  Indeed, the Supreme Court implicitly held in

*Badaracco* that fraud, for purposes of Section 6501(c)(1), requires the government

to show that "the petitioner has been guilty of fraud with intent to evade tax." [3]

The government's plain meaning analysis, on the other hand, focuses on

current Section 6501(c)(1) in isolation to assert that "it focuses entirely on the

fraudulent nature of *the return* without regard to *who* intended it."  (Gov't Br. 38.)

There are three significant problems with that analysis.  First, it fails to account for

the context in which Section 6501(c)(1) was originally enacted, or the intent of the

current Congress as expressed in Section 7454, which provide the very taxpayer

intent "qualification" that the government claims is missing in current Section

6501(c)(1).

---

[3] The government cites *Badaracco* for the proposition that statutes of limitations
barring the collection of taxes must be strictly construed in favor of the
government.  (Gov't. Br. 39.)  Presumptions only apply, however, when the statute
is ambiguous.  In this case, the plain text of the 1918 Act and the current statutory
scheme make clear Congress' intent that the limitations period be extended only
when the <u>taxpayer</u> files a fraudulent return with the intent to evade tax.  In any
event, there is an equally well-settled presumption (and one that was often quoted
in cases decided closer to the passage of the 1918 Act) that "taxing acts, including
provisions of limitation embodied therein, [are] to be construed liberally in favor of
the taxpayer."  *United States v. Updike*, 281 U.S. 489, 496 (1930) (*citing Bowers v.
N. Y. & Albany Co.*, 273 U. S. 346, 349 (1927)).  Thus, the presumption in
*Badaracco* only applies where "fraudulent conduct on the part of the taxpayer is
alleged."  *Lauckner v. United States*, No. 93-1594, 1994 WL 837464, at *7 (D. N.J.
May 4, 1994 ), *aff'd* 68 F.3d 69 (3d Cir. 1995).  Since the government does not
allege that the Pettinatis acted fraudulently, Section 6501(c)(1) should be
"construed liberally" in their favor.

Second, the government's analysis would cause the term "fraud" to be defined in a way that would obviously be nonsensical in other parts of the Code. For example, the fraud penalty applies when an underpayment "is due to fraud", without further defining "fraud" or explaining who has to commit the fraud. *See* Section 6663. According to the government's plain meaning analysis, all that the IRS would have to prove to impose the fraud penalty on a taxpayer is that someone (not necessarily the taxpayer) intended to evade tax and caused <u>the return</u> to be fraudulent. Yet even the government would apparently concede that the fraud penalty only applies if the <u>taxpayer</u> intended to evade tax. Indeed, the government has declined to assert the fraud penalty in this case.

Or as another example, Section 6161 allows the IRS to establish rules extending the time that a taxpayer has to pay a deficiency, except in cases where the deficiency is "due to fraud with intent to evade tax." Or as another example, Section 6404(g) limits the amount of interest that the IRS can charge, but that limitation does not apply "in a case involving fraud." *See* Section 6404(g)(2)(B). According to the government's argument here, whether the taxpayer intended to evade tax should be irrelevant to determining whether fraud exists within the meaning of those statutes, because they do not expressly require that the <u>taxpayer</u> intend to evade tax. It can hardly be the case, however, that Congress intended to exclude taxpayers who did not intend to evade tax from the relief provided by

these provisions.  The government's superficial plain meaning analysis (largely

limited to quoting a dictionary) cannot be correct because it would define "fraud"

in a way that does not make sense for purposes of numerous other provisions of the

Code that also use that word, and should be rejected for that reason.  *See Morrison-*

*Knudsen Constr. Co.*, 461 U.S. at 633-34 (rejecting a proposed definition of

"wages" for one section of an Act because the Court "would also have to

conclude" that the same definition applied in other parts of the statute); *Badaracco,*

464 U.S. at 397 (refusing to define the term "return" differently for purposes of

different parts of Section 6501).

Third, even reading Section 6501(c)(1) in a vacuum, as proposed by the

government, <u>still</u> leads to the conclusion that the <u>taxpayer</u> must intend to evade tax.

As explained by Professor Camp in his amicus brief, the second and third clauses

in Section 6501(c)(1) refer to "the tax" and "such tax."  Those clauses strongly

suggest that "the tax" that may be assessed and collected at any time is the "tax" of

the taxpayer who filed the return.  In effect, those clauses impose the very "of the

taxpayer" requirement that the government argues is missing.  The definition of

"return" in Section 6501(a) offers further support for Professor Camp's analysis.

After inserting the Section 6501(a) definition, Section 6501(c)(1) would literally

read "[i]n the case of a false or fraudulent return [filed by the taxpayer] with the

intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."

    2.   <u>The courts have consistently defined fraud by reference to the intent of the taxpayer.</u>

Until the Tax Court decided the *Allen* case in 2007, the courts (including the Tax Court) had consistently and universally looked to Act Sections 250(b) and (d) or their successors to define "fraud" the same way for purposes of the fraud penalty and the extended statute of limitations. *See, e.g., Neely v. Comm'r*, 116 T.C. 79, 85 (2001); *Rhone-Poulenc*, 114 T.C. at 548. For purposes of both statutes, the courts have held that "fraud" requires the government to prove by clear and convincing evidence that the <u>taxpayer</u> intended to evade taxes. *See, e.g.*, *Payne v. United States*, 224 F.3d 415, 421 (5th Cir. 2000) (holding that the government must show "fraudulent intent on the part of the taxpayer" to apply Section 6501(c)(1)); *Candela v. United States*, 635 F.2d 1272, 1273 (7th Cir. 1980) (same). This principal of law is stated in hundreds of cases, and there is no good reason to depart from it now.

Cases involving partnerships similarly require the IRS to prove that each <u>partner</u> intended to evade tax. As explained above, since TEFRA was enacted in 1982 the courts have consistently looked to Section 6229(c)(1) to determine whether and for how long an alleged fraudulent partnership tax return extended the

statute of limitations.[4]  Yet, there are a few reported cases involving fraudulent

partnership tax returns that pre-dated TEFRA such that the court applied Section

6501(c)(1).  In those cases, the courts concluded that the IRS had to prove that

each <u>partner</u> intended to evade tax.

For example, in *Klemach v. Commissioner*, 30 T.C.M. (CCH) 723 (1971),

*acquiescence by Commissioner*, 1971 WL 29518 (IRS AOD Nov. 22, 1971), the

taxpayer's business partner prepared their partnership's tax return, significantly

underreporting partnership income as a consequence of the partner/preparer's

scheme to falsely report his own income from the same partnership.  The

partner/preparer pled guilty to fraudulent evasion of income taxes.  The IRS then

assessed deficiencies against the taxpayer more than three years after his returns

were filed, but the Tax Court held the assessment was time-barred.  The Tax Court

focused on the taxpayer's intent to find that Section 6501(c)(1) did not apply,

concluding that the government failed to prove the requisite "intent to defraud the

Government by calculated tax evasion."  30 T.C.M. (CCH) at 727 (internal

citations and quotations omitted).

Similarly, in *Estate of Roe v. Commissioner*, 36 T.C. 939 (1961), one partner

caused the partnership to underreport its sales.  That caused the partnership to

---

[4] The government's reliance on *Transpac* is misplaced for that reason.  (Gov't Br. 42.)  In that case, the Federal Circuit applied Section 6229(c)(1), and not Section 6501(c)(1), so the decision hardly supports the government's arguments here.

40

understate the income that it reported to both partners, which in turn caused them to underreport their taxes.  The Tax Court focused on the intent of each partner to find that only one of them intended to evade taxes.  The Tax Court therefore held that Section 6501(c)(1) applied to that partner, but not the other.  *Id.* at 948-49; *see also Riley v. Comm'r*, 43 T.C.M. (CCH) 80, 87 (1981) "[A] partner in a partnership[ ] is not automatically guilty of fraud by reporting his share of fraudulently understated taxable income.").

The government's argument that Section 6501(c)(1) focuses on the return "without imposing any limit on *who* must have the requisite intent" (Gov't Br. 52), simply cannot be reconciled with the courts' historical interpretation of that section when a partnership return is at issue.  These cases hold that even an indisputably fraudulent partnership return does not cause the partners' returns to be fraudulent.  The IRS must show that the <u>partners</u> intended to evade tax for their returns to be fraudulent, which it has not done here.

        3.    <u>The government has abandoned the agency theory that the Tax Court relied on in *Allen*.</u>

In late 2000, the IRS analyzed the 1918 Act and concluded, consistent with the holding of the CFC, that Section 6501(c)(1) requires the IRS to prove that the <u>taxpayer</u> intended to evade tax:

> Applying the same definition of fraud for statute of limitations and fraud penalty purposes is logical in view

41

> of the history of these provisions. Many years ago, a single section of the Revenue Act contained the provisions establishing the fraud penalty and the statute of limitations for a fraudulent return. *See* Revenue Act of 1918, section 250(b), (d); *see also* Revenue Act of 1921, section 250(b), (d). By including both provisions in the same section of the Revenue Act, Congress presumably intended that the term "fraud" would have the same meaning for both purposes. *See Commissioner v. Estate of Ridgway*, 291 F.2d 257, 259 (3d Cir. 1961), nonacq., 1960-2 C.B. 8. We are not aware of any legislative history or court cases indicating that fraud may be defined differently for purposes of sections 6501(c)(1) and 6663.

*See* I.R.S. F.S.A. 200104006 (Sept. 15, 2000). The IRS changed course just a few months later, however, concluding "that the fraudulent intent of the taxpayer's agent provides a sufficient basis for applying section 6501(c)(1)," relying on principles of agency law to find that the agent's fraudulent intent should be imputed to the taxpayer. *See* I.R.S. F.S.A. 200126019 (Mar. 30, 2001).

The IRS then pressed its "agency" theory in the courts, with a single success in the *Allen* case. The Tax Court made several analytical errors in *Allen* that we discuss below, but the court principally based its holding on the rationale that a taxpayer "cannot hide behind an agent's fraudulent preparation of his returns and escape paying tax if the Government is unable to investigate fully the fraud within the limitations period." *Allen v. Comm'r*, 128 T.C. 37, 41 (2007).

Although the government made the same agency argument in the proceedings below, the government has abandoned it in this appeal. Indeed, the

government's opening brief does not ever use the words "agent" or "agency". That is likely because the D.C. Circuit recently held in a high-profile case that a tax return preparer is not a taxpayer's agent, and the government did not seek further review of that decision. *See Loving v. Internal Revenue Service*, 742 F.3d 1013, 1017 (D.C. Cir. 2014). [5]

The status of *Allen* is therefore highly questionable as it relied on a now discredited theory. The case was wrongly decided for other reasons as well. The Tax Court misapplied a plain meaning analysis by focusing on one phrase in Section 6501(c)(1) without considering the context in which the fraud exception was first enacted in the 1918 Act, or Section 7454. [6] The court compounded that error by refusing to consider the effect that its new definition of "fraud" would have on other parts of the Code, including the fraud penalty. And the court further erred in relying on a failed proposal from the House of Representatives in 1934 as "legislative history" for an Act that was passed 16 years earlier. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver*, N.A., 511 U.S. 164, 187 (1994)

---

[5] There are several reasons why Mayer was not an agent for BASR or its partners, aside from the holding in *Loving*. Jenkens & Gilchrist and Mayer, as a partner in that firm, expressly disclaimed any agency relationship with the Pettinatis. (*See* JA 1697.) Nor did Mayer or any other attorney at Jenkens & Gilchrist hold themselves out to the IRS as agents for BASR or its partners, as none of them signed the tax returns at issue here.

[6] Although the Tax Court examined the language of Act Section 250(d), it did so out of context because it did not consider Act Section 250(b).

("[F]ailed legislative proposals are 'a particularly dangerous ground on which to rest an interpretation of a prior statute.'").

Moreover, the government's current argument in this case is far broader than the argument it made in *Allen* (and *City Wide* which we discuss below). In those cases, the government argued that the adviser's intent to evade tax should be imputed to the taxpayer under principles of agency law. In this case, the government myopically focuses on the return regardless of who intended to evade the tax. Under this new rationale, the person who intended to evade tax need not be the taxpayer's agent or tax return preparer or, apparently, have any direct relationship at all with the taxpayer (according to the government, whether the bad actor signed or prepared the returns at issue "is a distinction without a difference", Gov't Br. 55). There is no basis in the law to support the breadth of the government's position.

The government's sole effort to support its focus on the return is to analogize to a fraudulent joint tax return which "lifts the statute of limitations on assessments against both spouses . . . even when only one spouse intended the fraud." (*See* Gov't Br. 56.) As the IRS has explained, however, that "analogy is not helpful because each spouse generally has joint and several liability on a joint return. In contrast to the husband/wife scenario, the return preparer is not a party to the return and the return preparer is not jointly liable with the [the taxpayer]."

44

*See* I.R.S. F.S.A. 200104006 (Sept. 15, 2000). The IRS confirmed that view in more recent administrative guidance, when it looked beyond the return to conclude that Section 6501(c)(1) did not apply to the personal tax return of an innocent shareholder in an S corporation that filed a fraudulent return. *See* I.R.S. C.C.A. 201238026 (Sept. 21, 2012). In the CCA, one shareholder caused the S corporation return to be fraudulent. The IRS refused to seek "an extension" of *Allen*, however, to argue that the fraudulent S corporation return caused the return filed by the other shareholder to be fraudulent because that "would require the Tax Court to focus on the fraud of a third party who did not prepare or file the return at issue, which seems an unlikely and factual stretch." Thus, outside of the brief that it filed in this case, the government realizes that "who" intended to evade the tax really does matter.

4. <u>No policy justification exists to hold open the statute of limitations in this case.</u>

The government argues at length that the purpose of Section 6501(c)(1) is to give the IRS an unlimited amount of time to assess tax on fraudulent tax returns "because of the special disadvantage the IRS faces in detecting and investigating these types of returns." (Gov't Br. 28, 43.) According to the government, the purpose of Section 6501(c)(1) is to remedy that disadvantage which exists regardless whether the taxpayer or someone else intended the fraud.

45

There are several problems with the government's argument. First, the Tax Court has held that the exact manner in which BASR's tax returns were prepared did <u>not</u> put the IRS "at a special disadvantage in detecting errors":

> [P]etitioner's disclosure contains no misstatement of the nature of items of income that would place respondent "at a special disadvantage in detecting errors." . . . Here, there is no improper labeling or misidentification. The partnership completely reported the transaction including the gross receipts, the cost or basis, and the net gain. The partnership also notified respondent that a section 754 election had been made. These disclosures did not mislead respondent or place him at a special disadvantage in detecting the error he alleges occurred.

*See* Order and Decision, *R and J Partners v. Comm'r*, No. 7166-06 (Tax Ct. Oct. 23, 2009); JA 1835. It cannot be that the same reporting that the Tax Court found full and adequate in a different case is "fraudulent" in this case.

Second, whether the primary purpose of Section 6501(c)(1) is to give the IRS more time to assess tax on fraudulent returns because they put the IRS at a special disadvantage is questionable. If that were true it seems unlikely that Congress would put the burden of proving fraud by clear and convincing evidence on the government. There is little reason for Congress to impose such a high standard if the only purpose of Section 6501(c)(1) is, as the government claims, to allow the IRS the time it needs to assess the tax that is due in situations where that is objectively difficult.

Third, even if something had been hidden from the IRS, there are strong policy reasons why "fraud", for purposes of Section 6501(c)(1), requires the IRS to prove that the <u>taxpayer</u> intended to evade tax. For example, "a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy." *Rothensies v. Elec. Battery Co.*, 329 U.S. 296, 301 (1946). If the IRS can satisfy Section 6501(c)(1) by proving that someone other than the taxpayer intended to evade tax, a taxpayer could almost never know with absolute certainty that a particular return is forever final, because almost all returns rely on information from third parties, and the taxpayer will never be relieved of the obligation to be prepared to substantiate positions.

The government cites *Badaracco* as support for its assertion that the purpose of Section 6501(c)(1) is provide unlimited time for the IRS to assess tax because of the special disadvantage that the IRS faces in auditing fraudulent returns, suggesting this provides a "fair" outcome in this case. In *Badaracco*, however, it was undisputed that the taxpayer's return was fraudulent so that there was no need for the Court to address fairness: "[i]t seems to us that a taxpayer who has filed a fraudulent return with intent to evade tax hardly is in a position to complain of the fairness of a rule that facilitates the Commissioner's collection of the tax due." *Badaracco*, 464 U.S. at 400. In this case, however, there is a serious question

whether applying an open-ended statute of limitations based on fraud is fair when the taxpayers have not committed any fraud.

A policy that allows the IRS to prove fraud through the intent of someone other than the taxpayer is also objectionable because of the disproportionate impact that would have on low income taxpayers who are more readily taken advantage of by unscrupulous return preparers. For example, in *City Wide Transit, Inc. v. Commissioner*, the taxpayer hired an unscrupulous preparer who filed false returns in the taxpayer's name and pocketed the payments that the taxpayer had intended for the IRS. 709 F.3d 102, 103-04 (2d Cir. 2013). It is hard to see the policy justification for allowing the IRS an indefinite period to assess that taxpayer, particularly when the IRS has other tools to seek restitution from the return preparer.

The government's policy rationales also create perverse incentives. For example, why would a taxpayer ever give evidence against an unscrupulous return preparer if the taxpayer's reward is that the preparer's fraud will cause the taxpayer's return to be subject to an open-ended statute of limitations? As another example, until *Allen* the law encouraged taxpayers to consult with tax advisers to ensure that return positions are taken in good faith. The government's contention that an adviser can <u>cause</u> the return to be fraudulent would stand that principle on its head, requiring taxpayers to second guess tax advisors.

In any event, all of the policy reasons that the government cites for giving different meanings to the term "fraud," depending on whether it is in the context of the penalty or the extended statute of limitations, have existed since those provisions were first enacted in 1918. As demonstrated above, however, the 1918 Act required the IRS to demonstrate that the <u>taxpayer</u> intended to evade tax. None of the policies cited by the government have changed since 1918, and there is no policy reason to construe the law differently now than how the courts construed it between 1918 and 2007 when *Allen* was decided. In any event, "[p]olicy considerations cannot override [a court's] interpretation of the text and structure of [an] Act, except to the extent that they may help to show that adherence to the text and structure would lead to a result 'so bizarre' that Congress could not have intended it." *Cent. Bank of Denver*, 511 U.S. at 188. That is not the case here.

5.    <u>The Second Circuit's holding in *City Wide* supports BASR.</u>

In *City Wide*, the taxpayer conceded during the Tax Court proceedings that the tax returns prepared by its agent, Beg, were "false or fraudulent" within the meaning of Section 6501(c)(1). 102 T.C.M. (CCH) 542, 543 (2011).[7] The taxpayer instead argued to the Tax Court: 1) that "*Allen v. Commissioner*, 128 T.C. 37 (2007), is not controlling and neither petitioner nor the payroll company

---

[7] Unlike in this case, the taxpayer in *City Wide* gave Beg a Power of Attorney that authorized him to act for the taxpayer in front of the IRS.

intended to evade tax or willfully attempted to evade tax" and 2) that in any event the Commissioner had "not proved by clear and convincing evidence that Mr. Beg intended to evade tax." *City Wide*, 102 T.C.M. (CCH) at 545 and n.22. The Tax Court agreed with City Wide on the latter.

The government appealed, and spent a good part of its opening brief defending *Allen* to support its claim that the "intent to evade" tax requirement in Section 6501(c)(1) does not require the government to show that the taxpayer intended to evade tax. *See* Opening Brief for the Appellant at 23-31, *City Wide Transit, Inc. v. Comm'r*, 709 F.3d 102 (2013) (No. 12-1040)**,** 2012 WL 2501145, at *23-31. City Wide conceded, however, that "Beg filed false or fraudulent tax returns and amendments on its behalf and that City Wide's returns trigger the tolling provision if [the Second Circuit finds] that Beg filed them with the intent to evade City Wide's taxes." *City Wide*, 709 F.3d at 107. Thus, City Wide chose to defend the Tax Court's decision only on the ground that the Commissioner had failed to prove that Beg intended to evade tax.

Notwithstanding the one-sided briefing, the Second Circuit was skeptical of the government's position on the "intent to evade tax" language, for all three judges on the panel took the unusual step of each separately asking whether City Wide had intended its concession. *Id*. at n.3. Assured that it did, the Second Circuit accepted the concession "without deciding whether certain factual

50

situations might arise that sever the tax*payer's* liability from the tax-*preparer's* wrongdoing." *Id.* The Second Circuit was "confronted, then, with a very narrow question: whether, considering all of the evidence, the tax court made a mistake by concluding that the Commissioner failed to establish by clear and convincing evidence that Beg intended to evade City Wide's taxes through his embezzlement scheme." *Id.* at 107. Thus the Second Circuit did <u>not</u> agree "with *Allen* in all respects", as the government claims in its brief. (Gov't Br. 54.)

While the Second Circuit did write that *Allen* "makes intuitive sense," it did so without the benefit of any briefing from the taxpayer and in reliance on the agency theory that the government has since abandoned. In *City Wide*, the government argued to the Second Circuit that "the risk of loss due to a return preparer's fraud is properly borne by the taxpayer who gave the agent the apparent authority to commit the fraud." 2012 WL 2501145, at *28. The government explained that under "long-standing agency principles, a principal is liable if 'the agent's position facilitates . . . the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.'" *Id.* (quoting Restatement (Second) of Agency § 261 (1958)).

In this case, however, Mayer did not have apparent authority to act on BASR's or the Pettinatis' behalf, because he did not sign or file any of their tax

returns. To the contrary, all of the returns were signed by John Malone (as paid preparer) and one of the Pettinatis (depending on the particular return), none of whom intended to evade tax.

That distinction was important to the Second Circuit, even before the D.C. Circuit decision in *Loving* that eviscerated the notion that a return preparer is a taxpayer's agent, for the Second Circuit explained that this "would be another case" if Beg had "falsely recorded" certain items that caused the taxpayer to file a false return. "If that had been the case, Beg's fraud on the company would have *caused* the company to file a false return, and we would not assume that the company intended to evade a tax by filing that false return." *City Wide*, 709 F.3d at 108. Thus, even accepting *Allen* as good law, the Second Circuit explained that the government must prove that the person who filed the return intended to evade tax in order for the extended statute of limitations to apply – that someone <u>else</u> (e.g., Mayer) may cause a taxpayer to file a false return is not sufficient.

The government has not even alleged in this case, however, that the Pettinatis or Malone intended to evade tax. Rather, the government alleges that Mayer "caused" Malone and the Pettinatis to file false returns, and the government is asking the Court to extend *Allen's* holding to advisers (like Mayer) who (allegedly) cause a return preparer to file a false return. (*See* Gov't Br. 55.) That is exactly what the Second Circuit said it would not do.

52

**C.** **The Government Has Not Produced Sufficient Evidence of Fraud Upon Which A Fact-finder Applying the Clear and Convincing Evidence Requirement Could Reasonably Find In Its Favor.**

The government bears the burden of proving fraud by clear and convincing evidence. *Gagliardi v. United States*, 81 Fed. Cl. 772, 777 (2008); 26 U.S.C. § 7454(a). Clear and convincing evidence is that which gives the finder of fact "an abiding conviction that the truth of [the proponent's] factual contentions are 'highly probable,'" meaning that such evidence "instantly tilt[s] the evidentiary scales in the affirmative when weighed against the evidence . . . offered in opposition." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

When the "'clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For a moving party to prevail on summary judgment against a non-moving party who has the burden of proof, the moving party "must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could" rely. *Duramed Pharms., Inc. v. Watson Labs., Inc.*, 413 F. App'x 289, 292 (Fed. Cir. 2011) (quoting *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001)).

The government's evidence falls far short of that high standard. The government's case is built on an affidavit from its "cooperating witness" Mayer, who would testify that <u>he</u> intended to evade the Pettinatis' taxes. Yet Mayer was only one of many lawyers at Jenkens who worked on this transaction, and the government has not alleged or provided any evidence that any of the other lawyers had fraudulent intent. Moreover, the government has not alleged or provided any evidence that John Malone, the CPA who prepared and signed the returns, had fraudulent intent. And, of course, the government has not alleged that BASR or its partners had fraudulent intent. The government's argument, then, is that a tax return is fraudulent if it reflects advice given by a tax lawyer who intended for the taxpayer to evade taxes, even though the taxpayer, the return preparer, and all the other lawyers who worked on the transaction did not. The law does not support such an expansive view of fraud.

There is no need to spend pages developing this point. No reasonable juror could conclude that Mayer's affidavit "instantly tilt[s] the evidentiary scales in the affirmative when weighed against the" entirety of the facts. Although the trial court concluded that "there is no question that BASR's partnership return included false or fraudulent items," the court appears to have been misled by the same argument that the government made to open its brief on this appeal: that every Son of BOSS transaction is by definition fraudulent. The trial court did not discuss the

evidence or evaluate it under the clear and convincing standard.  The government

cannot prevail when the evidence is viewed under the correct standard.  The

judgment below should be affirmed for that reason.

### D.    The Government's Assertion of Fraud is Arbitrary and Capricious and is Therefore Invalid Under the Administrative Procedure Act.

The final judgment in favor of BASR should be affirmed because the

government's assertion of fraud is arbitrary and capricious and invalid under the

Administrative Procedure Act (APA).  5 U.S.C. § 701 *et seq*.; *Cohen v. United*

*States*, 650 F.3d 717, 736 (D.C. Cir. 2011) (stating that Congress has not exempted

the IRS from the APA) (citing *Mayo Found. for Med. Educ. & Res. v. United*

*States*, 131 S. Ct. 704, 713, 178 L. Ed. 2d 588 (2011)).  BASR is but one of

hundreds of partnerships that entered into transactions almost identical to the one

at issue in this case with the advice and assistance of the Jenkens law firm.  The

IRS challenged those partnerships' tax returns, just like it adjusted BASR's tax

returns, and many of those cases ended up in various courts.  Indeed, this case was

previously stayed pending resolution of first *Grapevine Imports, Ltd. v. United*

*States*, 71 Fed. Cl. 324 (2006), *rev'd*, 636 F.3d 1368 (Fed. Cir. 2011), *cert.*

*granted*, *judgment vacated*, 132 S. Ct. 2099 (Apr. 30, 2012) and then *Home*

*Concrete & Supply, LLC, v. United States*, 599 F. Supp. 2d 678 (E.D.N.C. 2008),

*rev'd*, 634 F.3d 249 (4th Cir. 2011), *aff'd*, 132 S.Ct. 1836 (2012), which both

involved transactions structured by Jenkens like the one at issue here. Yet, the government has not asserted fraud in any of those cases even though the government's theory – that the adviser's alleged fraudulent intent is sufficient to make the taxpayers' return fraudulent – would apply equally to those other cases. This case does not present any special circumstances that would justify holding BASR's tax returns to be fraudulent when the returns at issue in those other cases were not.

In the proceedings below, the government claimed it was not required to explain its reasoning for its disparate treatment of BASR, citing a number of old cases that rejected taxpayer claims of disparate treatment. Those cases are no longer valid precedents. In *Mayo Foundation for Medical Education and Research v. United States*, 131 S. Ct. 704 (2011), the Supreme Court held that the IRS is subject to the same principles of administrative law as other agencies, rejecting the notion – implicit in the old cases cited by the government – that the IRS is entitled to special treatment in the administrative law context.

In *Dominion Resources, Inc., v. United States*, 681 F.3d 1313 (Fed. Cir. 2012), the Federal Circuit cited *Mayo* and determined that a Treasury regulation was invalid under the APA because the Treasury Department had failed to provide a reasoned explanation for the regulation as required by *Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual*

*Automobile Insurance Co.*, 463 U.S. 29, 43 (1983). The same *State Farm* requirement that the Federal Circuit applied in *Dominion Resources* to invalidate a regulation also requires administrative agencies to "provide an adequate explanation to justify treating similarly situated parties differently." *Burlington Northern and Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776 (D.C. Cir. 2005) (citations omitted). "Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld." *Id*. at 777 (citations omitted).

The government was required to explain in this case why it is treating BASR differently from similarly situated taxpayers. The government's refusal to provide that information makes its assertion of fraud "arbitrary and capricious" and invalid under the APA. The final judgment should be affirmed for that reason.

## CONCLUSION

The judgment should be affirmed for the forgoing reasons.


/s/ Thomas A Cullinan
Thomas A. Cullinan
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404) 853-8075
Fax: (404) 853-8806

*Attorney for Plaintiffs-Appellees*
July 8, 2014

# STATUTORY ADDENDUM

**Internal Revenue Code of 1986 (26 U.S.C.):**

§ 6229.  Period of limitations for making assessments.

(a) General rule.  Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of –

(1) the date on which the partnership return for such taxable year was filed, or

(2) the last day for filing such return for  such year (determined without regard to extensions).

\* \* \* \*

(c) Special rule in case of fraud, etc.

(1) False return.  If any partner has, with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item –

(A) in the case of partners so signing or participating in the preparation of the return, any tax imposed by subtitle A which is attributable to any partnership item (or affected item) for the partnership taxable year to which the return relates may be assessed at any time, and

(B) in the case of all other partners, subsection (a) shall be applied with respect to such return by substituting "6 years" for "3 years".

\* \* \* \*

§ 6229

(b) Extension by agreement. –

(3) Coordination with section 6501(c)(4). – Any agreement under section 6501(c)(4) shall apply with respect to the period described in subsection (a) only if the agreement expressly provides that such agreement applies to tax attributable to partnership items.

§ 6501.  Limitations on assessment and collection.

(a) General rule.  Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

\*   \*   \*   \*

(c) Exceptions.

(1) False return.  In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

\*   \*   \*   \*

(n) Cross references.

\*   \*   \*   \*

(2) For extension of period in the case of partnership items (as defined in section 6231(a)(3)), see section 6229.

60

§ 6501

(c) Exceptions. –

*[Caution: Code Sec. 6501(c)(4), below, prior to amendment by P.L. 105-206, generally applies to requests to extend the period of limitations made on or before December 31, 1999.]*

(4) Extension by agreement. – Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon.  The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

*[Caution: Code Sec. 6501(c)(4), below, as amended by  P.L. 105-206, generally applies to requests to extend the period of limitations made after December 31, 1999.]*

(4) Extension by agreement. –

(A) In general. – Where before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon.  The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

(B) Notice to taxpayer of right to refuse or limit extension. – The Secretary shall notify the taxpayer of the taxpayer's right to refuse to extend the period of limitations, or to limit such extension to particular issues or to a particular period of time, on each occasion when the taxpayer is requested to provide such consent.

§ 6663

(a) Imposition of penalty. – If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.

(b) Determination of portion attributable to fraud. – If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud.

§ 7454

(a) Fraud. – In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary.

**Revenue Act of 1918, Pub. L. No. 65-254, 40 Stat. 1057:**

§ 250

(b)  As soon as practicable after the return is filed, the Commissioner shall examine it.  If it then appears that the correct amount of the tax is greater or less than that shown in the return, the installments shall be recomputed. If the amount already paid exceeds that which should have been paid on the basis of the installments as recomputed, the excess so paid shall be credited against the subsequent installments; and if the amount already paid exceeds the correct amount of the tax, the excess shall be credited or refunded to the taxpayer in accordance with the provisions of section 252.

If the amount already paid is less than that which should have been paid, the difference shall, to the extent not covered by any credits then due to the taxpayer under

section 252, be paid upon notice and demand by the collector.  In such case if the return is made in good faith and the understatement of the amount in the return is not due to any fault of the taxpayer, there shall be no penalty because of such understatement.  If the understatement is due to negligence on the part of the taxpayer, but without intent to defraud, there shall be added as part of the tax 5 per centum of the total amount of the deficiency, plus interest at the rate of 1 per centum per month on the amount of the deficiency of each installment from the time the installment was due.

If the understatement is false or fraudulent with intent to evade the tax, then, in lieu of the penalty provided by section 3176 of the Revised Statutes, as amended, for false or fraudulent returns willfully made, but in addition to other penalties provided by law for false or fraudulent returns, there shall be added as part of the tax 50 per centum of the amount of the deficiency.

(c)  If the return is made pursuant to section 3176 of the Revised Statutes as amended, the amount of tax determined to be due under such return shall be paid upon notice and demand by the collector.

(d)  Except in the case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made, and no suit or proceeding for the collection of any tax shall be begun after the expiration of five years after the date when the return was due or was made.  In the case of such false or fraudulent returns, the amount of tax due may be determined at any time after the return is filed, and the tax may be collected at any time after it becomes due.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Clerk

of the Court for the United States Court of Appeals for the Federal Circuit by using

the appellate CM/ECF system on this 8th day of July 2014.  I further certify that

service of the brief was made on counsel for the appellant by CM/ECF.


/s/ Thomas A Cullinan
Thomas A. Cullinan
*Attorney for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

    ☑     This brief contains 13,988 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii), or

    ☐     The brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     The brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

    ☑     This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font, or

    ☐     The brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

/s/ Thomas A Cullinan
Thomas A. Cullinan
*Attorney for Plaintiffs-Appellees*
Dated: July 8, 2014